# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

GENTEX CORPORATION, a Delaware corporation

       Plaintiff,

vs.

SUPERIOR MOLD COMPANY, INC., a California corporation,

       Defendant.

CASE NO.: **20-CV-00632-HB**

## DEFENDANT SUPERIOR MOLD COMPANY, INC.'S ANSWER TO COMPLAINT WITH COUNTERCLAIM

Defendant Superior Mold Company, Inc. ("Defendant") hereby answers the Complaint filed by Plaintiff Gentex Corporation, as follows:

1.    Defendant is without sufficient information or knowledge at the present time to admit or deny the allegation and, on that basis, expressly denies the allegations set forth in Paragraph 1 of the Complaint.

2.    Defendant admits the allegations stated in Paragraph 2 of the Complaint.

### JURISDICTION AND VENUE

3.    Defendant admits the allegations stated in Paragraph 3 of the Complaint.

4.    Defendant denies the allegations in Paragraph 4, including as a conclusion of law to which no response is required and attempts to characterize writings that speak for themselves.

### FACTUAL BACKGROUND

5.    Defendant admits the allegations stated in Paragraph 5 of the Complaint.

6.    Defendant admits the allegations stated in Paragraph 6 of the Complaint.

7. Defendant admits that the offer to purchase and agreement to supply the R2 Receivers are documented in purchase orders and accompanying terms and conditions as stated in Paragraph 7 of the Complaint, but deny those are the only documents that constitute the agreement between the parties.

8. Defendant denies the allegations in Paragraph 8 of the Complaint, including as a conclusion of law to which no response is required.

9. Defendant is without sufficient information or knowledge at the present time to admit or deny the allegation and, on that basis, expressly denies the allegations set forth in Paragraph 9 of the Complaint.

10. Defendant denies the allegations stated in Paragraph 10 of the Complaint, including as a conclusion of law to which no response is required and attempts to characterize a writing that speak for itself.

11. Defendant denies the allegations stated in Paragraph 11 of the Complaint, including as a conclusion of law to which no response is required and attempts to characterize a writing that speak for itself.

12. Defendant denies the allegations stated in Paragraph 12 of the Complaint, including as a conclusion of law to which no response is required and attempts to characterize a writing that speak for itself.

13. Defendant denies the allegations stated in Paragraph 13 of the Complaint, including as a conclusion of law to which no response is required and attempts to characterize a writing that speak for itself.

14. Defendant denies the allegations stated in Paragraph 14 of the Complaint, including as a conclusion of law to which no response is required and attempts to characterize a writing that speak for itself.

15. Defendant denies the allegations stated in Paragraph 15 of the Complaint, including as a conclusion of law to which no response is required and attempts to characterize a writing that speak for itself.

16. Defendant denies the allegations stated in Paragraph 16 of the Complaint, including as a conclusion of law to which no response.

17. Defendant denies the allegations stated in Paragraph 17 of the Complaint.

18. Defendant denies the allegations stated in Paragraph 18 of the Complaint.

19. Defendant denies the allegations stated in Paragraph 19 of the Complaint.

20. Defendant is without sufficient information or knowledge at the present time to admit or deny the allegation and, on that basis, expressly denies the allegations set forth in Paragraph 20 of the Complaint.

21. Defendant denies the allegations stated in Paragraph 21 of the Complaint.

**COUNT I**
**BREACH OF CONTRACT**

22. Defendant reincorporate and re-alleges its answers to Paragraphs 1 through 21 as though fully set forth herein.

23. Defendant denies the allegations stated in Paragraph 23 of the Complaint, including as a conclusion of law to which no response is required and attempts to characterize a writing that speak for itself.

24. Defendant denies the allegations stated in Paragraph 24 of the Complaint, including as a conclusion of law to which no response is required and attempts to characterize a writing that speak for itself.

25. Defendant denies the allegations stated in Paragraph 25 of the Complaint, including as a conclusion of law to which no response.

26. Defendant denies the allegations stated in Paragraph 26 of the Complaint, including as a conclusion of law to which no response is required.

## COUNT II
## FRAUD

27. This Count has been dismissed and thus no answer is required.

28. This Count has been dismissed and thus no answer is required.

29. This Count has been dismissed and thus no answer is required.

30. This Count has been dismissed and thus no answer is required.

31. This Count has been dismissed and thus no answer is required.

32. This Count has been dismissed and thus no answer is required.

33. This Count has been dismissed and thus no answer is required.

34. This Count has been dismissed and thus no answer is required.

## COUNT III
## NEGLIGENT MISREPRESENTATION

35. This Count has been dismissed and thus no answer is required.

36. This Count has been dismissed and thus no answer is required.

37. This Count has been dismissed and thus no answer is required.

38. This Count has been dismissed and thus no answer is required.

39. This Count has been dismissed and thus no answer is required.

40. This Count has been dismissed and thus no answer is required.

## AFFIRMATIVE DEFENSES

FURTHER, AS SEPARATE AFFIRMATIVE DEFENSES to each and every claim for relief, Defendant is informed and believes and, based thereon, alleges as follows:

### FIRST AFFIRMATIVE DEFENSE
(Novation)

As a first and separate affirmative defense this answering Defendant alleges that the Plaintiff's cause of action for Breach of Contract fails because the parties entered into a novation whereby all prior agreements between the parties were extinguished and replaced with a new agreement.

### SECOND AFFIRMATIVE DEFENSE
(Laches)

As a second affirmative defense this answering Defendant alleges that the Complaint, and each and every cause of action asserted therein, is barred by the doctrine of laches.

### THIRD AFFIRMATIVE DEFENSE
(Estoppel)

As a third and separate affirmative defense this answering Defendant alleges that claims alleged in the Complaint, and each and every claim therein, if any there are, are barred by the doctrine of estoppel.

### FOURTH AFFIRMATIVE DEFENSE
(Accord and Satisfaction)

As a fourth and separate affirmative defense this answering Defendant alleges that claims alleged in the Complaint fail because the parties entered into an accord and satisfaction of all contract claims.

## FIFTH AFFIRMATIVE DEFENSE
### (Consent)

Defendant is informed and believe and based thereon allege that Plaintiff is barred from recovering on the causes of action asserted herein because Plaintiff specifically consented to and requested that Defendant perform the actions alleged herein.

## SIXTH AFFIRMATIVE DEFENSE
### (Complete Performance)

Defendant is informed and believes and based thereon alleges that it has appropriately, completely, and fully performed and discharged any and all obligations and legal duties arising out of the matters alleged in the Complaint.

## SEVENTH AFFIRMATIVE DEFENSE
### (Failure of Consideration)

Plaintiff's complaint and each and every purported cause of action therein is barred due to a failure of consideration on the contract sued upon herein.

## EIGHTH AFFIRMATIVE DEFENSE
### (Condition Precedent)

Defendant is informed and believes and based thereon alleges that performance by Defendant of certain acts was contingent upon receipt of specific instructions or otherwise properly directed any which supposedly was to be undertaken by Defendant, thus Plaintiff's authority, direction and cooperation was a condition precedent to any alleged obligation by Defendant to perform such acts.

## NINTH AFFIRMATIVE DEFENSE
### (Substantial or Partial Performance/Divisibility)

Defendant is informed and believes and based thereon alleges that the contracts alleged in the Complaint, if any, have been substantially and/or partially performed, and as such, are subject to divisibility.

## TENTH AFFIRMATIVE DEFENSE
### (Assumption of the Risk)

Defendant is informed and believes and based thereon alleges that if there presently exists or ever existed, any or all of the alleged rights, claims, or obligations which Plaintiff seeks by way of its Complaint, said claims or obligations are unenforceable by reason of the fact that plaintiff assumed the risk involved in the transaction.

## ELEVENTH AFFIRMATIVE DEFENSE
### (Failure of Performance by Plaintiff)

Defendant is informed and believes and based thereon alleges that if Defendant failed to perform any oral or written promise, covenant or condition, its failure of performance was caused, and continues to be caused, by the acts and omissions of Plaintiff, and that Plaintiff is estopped to deny otherwise.

## TWELFTH AFFIRMATIVE DEFENSE
### (Impossibility of Performance)

Defendant is informed and believes and based thereon alleges that recovery in this action is barred and that Defendant's performance on the purported contract is therefore excused by impossibility of performance of the purpose for which the purported contract was made.

## THIRTEENTH AFFIRMATIVE DEFENSE
### (Set Off)

Defendant is informed and believes and based thereon alleges that any recovery in this action is diminished in whole or in part based on an amount owed to the Defendant.

## PRAYER FOR RELIEF

WHEREFORE, Defendant Superior Mold Company prays for judgment and relief as follows:

1. That Plaintiff take nothing by way of the Complaint and each Claim for Relief asserted therein;

2. For costs of suit and attorneys' fees as allowed by law; and

3. For such other and further relief as the Court deems fair and equitable.

## COUNTERCLAIMS OF SUPERIOR MOLD COMPANY, INC.

Defendant/Counterclaim Plaintiff Superior Mold Company, Inc. a California corporation, ("Superior") alleges as follows:

## PARTIES

1. Defendant/Counterclaim Plaintiff Superior is, and at all times relevant to this action was, a California corporation with its principal place of business at 3122 South Maple Street, Santa Ana, California 92707.

2. Plaintiff/Counterclaim Defendant Gentex Corporation, is a Delaware corporation registered, domesticated, and authorized to do business under the General Corporation law of the State of California, with its principal place of business in the State of California located at 9859 7th Street, Rancho Cucamonga, California 91730.

## FACTS COMMON TO ALL CAUSES OF ACTION

3. Superior is a manufacturer of injection molded products primarily in the communications, medical, defense and aerospace, industrial and semiconductor, multimedia, automotive, commercial, and clean technology sectors.

4. Beginning in 2014, Gentex and Superior entered into multiple agreements related to Superior molding parts for flight helmets for Gentex. All parts were to be built using molds created by Gentex' engineers.

5. One of the flight helmet parts Gentex Requested from Superior was a rotatable receiver base used to connect an oxygen mask to a flight helmet, referred to simply as an R2 receiver base and cover.

6. Beginning in 2015, the R2 base was exhibiting failure due to cracking while being attached to the helmet. Based on this, Gentex made multiple revisions to the design and molding process in order to eliminate the failure due to cracking. None of Gentex' proposed changes in design eliminated the part's failure due to cracking.

7. In late January 2019, Gentex proposed completely reworking the mold for the R2 Receiver. Gentex engineers met with Superior in February 2019 in order to tour Superior's facilities. As a result of that tour, Gentex requested that Superior assist in creating a new design and mold for the R2 base.

8. At Gentex' request, based on Superior's experience in injection molding, and in anticipation of Gentex's representation that once a correction to the mold design and mold process eliminated the part failure, Superior would be permitted to continue molding this specific part for Gentex, Superior made specific recommendations regarding the molding process and design of the R2 receiver. These recommendations were novel and concrete and were based on Superior's unique knowledge of the injectable mold process. At the same time, Superior provided Gentex with a quote to build the suggested new mold based on the proposed design modifications.

9. On or around May 21, 2019, Gentex agreed to a novation of the prior agreements. As part of that novation, Gentex agreed it would continue to order and purchase non-R2 receiver parts. Gentex would pay for 50% of outstanding invoices for R2 receiver parts already

produced. They further agreed they would conduct a joint meeting in order to determine the root cause of the failure of the R2 part.

10. Over the next few months, Gentex continued to issue purchase orders to Superior for special order parts. In order to fill these open purchase orders, Superior ordered special and unique material that could only be used to manufacture the special orders parts requested by Gentex. Superior would not have ordered said materials for any other projects but for the need for the materials to fulfill Gentex's orders.

11. On or about September 12, 2019, Gentex made arrangements to pick up all of their molds from Superior. On or about September 16, 2019, Gentex picked up all of its molds.

12. At the time Gentex picked up all of its molds from Superior, it had 17 open purchase orders with Superior for specially manufactured parts. The value of those 17 open purchase orders was at least $46,424.49.

13. Gentex had not cancelled the 17 open purchase order prior to the time it picked up its molds.

14. In reliance on the agreement between the parties and in an effort to satisfy its obligations to Gentex for filling the 17 open purchase orders, Superior ordered at least $25,410.00 in special plastics weighing 1,540 pounds. This material is unique and is being stored by Superior but Superior has no use for these special plastics.

15. Superior is informed and believes that Gentex has taken Superior's proposed mold design modifications, which is its intellectual property, and has misappropriated that intellectual property in order to create the mold and produce the R2 receivers with Superior's competitors.

# CAUSES OF ACTION

## FIRST CAUSE OF ACTION
**Breach of Contract**

16. Defendant/Counterclaim Plaintiff repeats and reincorporates by reference Paragraphs 1 through 15, inclusive, as though fully set forth herein.

17. As set forth in further detail in the Facts Common to All Causes of Action, in May 2019, Gentex had agreed to continue to order non-R2 parts from Superior if Superior assisted Gentex in determining the root cause of the R2 part failure.

18. In reliance on the bargain agreed to between the parties, Superior immediately initiated a process to manufacture those parts using the molds supplied by Gentex. Superior ordered special and unique material that could only be used to manufacture the special orders parts requested by Gentex. Superior would not have ordered said materials for any other projects but for the need for the materials to fulfill Gentex's orders.

19. Additionally, in reliance on this agreement, Superior provided Gentex access to Superior's intellectual property; specifically, Superior indicated specific, novel and unique procedures in the molding process that could eliminate the failure of the R2 process. Thus, Superior fulfilled all conditions of the agreement between the parties.

20. However, on or about September 12, 2019, Gentex made arrangements to pick up all of their molds from Superior. On or about September 16, 2019, Gentex picked up all of its molds. At the time Gentex picked up all of its molds from Superior, it still had 17 open purchase orders with Superior for specially manufactured parts. The value of those 17 open purchase orders was at least $46,424.49.

21. Gentex had not cancelled the 17 open purchase order prior to the time it picked up its molds.

22. In reliance on the agreement between the parties and in an effort to satisfy its obligations to Gentex for filling the 17 open purchase orders, Superior ordered at least $25,410.00 in special plastics weighing 1,540 pounds. This material is unique and is being stored by Superior but Superior has no use for these special plastics.

23. Despite making written demand therefor, Gentex has failed and refused to pay for the materials ordered by Superior at its request.

24. Notwithstanding these obligations, Gentex now stands in breach of the agreement Superior by having failed and refused to remit payment on the outstanding invoices and by causing Superior to invest out of pocket costs for purchase of materials solely and specifically to be used for Gentex's products.

25. As a direct and proximate result of Gentex's breach of contract, Superior has been damaged in a sum no less than $71,834.29.

### SECOND CAUSE OF ACTION
**Promissory Estoppel**

26. Defendant/Counterclaim Plaintiff repeats and reincorporates by reference Paragraphs 1 through 25, inclusive, as though fully set forth herein.

27. As set forth in detail in this counterclaim, Superior and Gentex had a clear and unambiguous promise to each other based on the agreement and understanding of the parties with respect to Gentex's provision of molds to Superior for Superior to then produce goods for Gentex pursuant to the purchase orders issued to Superior by Gentex.

28. Superior fully conducted itself in justifiable reliance on the agreement and understanding between itself and Gentex in regards to obtaining specialized materials requested by Gentex for which Superior has no other use or ability to recoup such cost. Moreover, Superior's justifiable reliance occurred with respect to significant investment of man-hours and

resources to developing and producing the products required of Gentex to satisfy the purchase orders.

29. Additionally, in reliance on Gentex's representation of continuing to satisfy purchase orders, Superior allowed Gentex access to Superior's intellectual property.

30. Moreover, by the end of November 2019, Gentex had 17 open purchase orders issued to Superior for Superior to manufacture special order parts for Gentex.

31. However, on or about September 12, 2019, Gentex made arrangements to pick up all of their molds from Superior. On or about September 16, 2019, Gentex picked up all of its molds.

32. At the time Gentex picked up all of its molds from Superior, it had 17 open purchase orders with Superior for specially manufactured parts. The value of those 17 open purchase orders was at least $46,424.49.

33. Gentex had not cancelled the 17 open purchase orders prior to the time it picked up its molds.

34. Superior's reliance on the agreement between the parties was both justifiable and reasonably foreseeable based upon the actual conduct of the parties and based upon the continuing efforts of the parties to resolve Gentex's mold problems with revisions and continuing assertions of fact by Gentex representatives for Superior to continue working on fulfilling the outstanding, and un-canceled, purchase orders.

35. Defendant/Counterclaim Plaintiff has been damaged by its justifiable and reasonably foreseeable reliance on Gentex's promise and agreement between the parties and the subsequent outstanding, un-canceled, purchase orders, which detrimental reliance is estimated to be at least $71,834.29.

## THIRD CAUSE OF ACTION
### Unjust Enrichment

36. Defendant/Counterclaim Plaintiff repeats and reincorporates by reference Paragraphs 1 through 46, inclusive, as though fully set forth herein.

37. As set forth herein-above, Defendant Gentex is in receipt of a benefit to which it has no entitlement based upon the following facts.

38. Notwithstanding demands that have been made by Superior to Gentex representatives, Defendant Gentex has failed and/or refused to make such remittance to Superior.

39. Gentex's receipt and retention of that benefit is unjust and is at the expense of Superior's rights because of the written agreement between the parties and the subsequent purchase orders issued to Superior by Gentex.

40. As a proximate result of Gentex's unjust enrichment, Superior has been damaged and will continue to suffer damage in an amount of at least $71,834.29.

## FOURTH CAUSE OF ACTION
### Misappropriation of Intellectual Property

41. Defendant/Counterclaim Plaintiff repeats and reincorporates by reference Paragraphs 1 through 40, inclusive, as though fully set forth herein.

42. Superior through its years' experience in the field of injectable molds has knowledge regarding the molding process that derives its value from not being generally known to the general public.

43. For over four years, Gentex was unable to solve the problem of the failure and cracking of the R2 receiver, based on Gentex' designs and molds. Accordingly, Gentex requested Superior provide Gentex access to Superior's facility and intellectual property in an attempt to

find a solution to the R2 failure. Gentex promised that Superior would manufacture the R2 part if a solution to the cracking could be found and a new mold was made.

44. In reliance on Gentex' promise, Superior shared its intellectual property with Gentex. Specifically, Superior recommended 4 specific, novel design modifications to the tooling process that would eliminate failure due to cracking.

45. Upon receiving Superior's intellectual property, Gentex removed all business from Superior. Superior is informed and believes and based thereon alleges that Gentex has taken Superior's intellectual property and has shared this property with Superior's competition, to Superior's detriment.

46. As a result of Gentex' misappropriation of Superior's intellectual property, Superior has been damaged in lost profits and business opportunities in an amount to be determined at trial.

## FIFTH CAUSE OF ACTION
**Quantum Meruit for Services Rendered**

47. Defendant/Counterclaim Plaintiff repeats and reincorporates by reference Paragraphs 1 through 46, inclusive, as though fully set forth herein.

48. Within the last three years, Superior has provided Gentex, at its special instance and request, with services as provided in the agreement between the parties. Superior has also provided Gentex with access to intellectual property, including expert recommendations regarding design to avoid failure of the R2 part.

49. The unpaid value of those services to Gentex is at least $71,834.27 and continues to be unpaid despite Superior's repeated requests for payment for the services rendered to Gentex.

## **PRAYER FOR RELIEF**

WHEREFORE, Defendant/Counterclaim Plaintiff Superior Mold Company, Inc. prays for relief as follows:

1. For special damages in an amount no less than $71,834.27 plus accrued interest according to proof at time of trial;

2. For pre-judgment interest from and after the due date;

3. For all other incidental damages;

4. For the value of Defendant/Counterclaim Plaintiff's justifiable and reasonably foreseeable reliance on Plaintiff/Counterclaim Defendant's promises as alleged in this Complaint, which is estimated to be at least $71,834.27;

5. For the reasonable value of the services rendered from Defendant/Counterclaim Plaintiff to Plaintiff/Counterclaim Defendant;

6. For the profits lost by Defendant/Counterclaim Plaintiff as a result of Plaintiff/Counterclaim Defendant's misappropriation of the Defendant/Counterclaim Plaintiff's intellectual property.

7. For such other, further, and different relief as the Court deems just and proper.

*/s/ Colin J. O'Boyle*
Colin J. O'Boyle
**ELLIOTT GREENLEAF, PC**
925 Harvest Drive, Suite 300
Blue Bell, Pennsylvania 19422
Telephone: (215) 977-1000
Facsimile: (215) 977-1099
*Attorney for Defendant*
*Superior Mold Company, Inc.*

Dated: October 13, 2020

Stephen A. Madoni
**LAW OFFICE OF STEPHEN A. MADONI**
A Professional Law Corporation
1151 Dove Street, Suite 235
Newport Beach, California 92660
Telephone: (949) 723-7600
Facsimile: (949) 723-7601
*Pro Hoc Vice Attorney for Defendant*
*Superior Mold Company, Inc.*